[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Lorraine Laverdure, began this action by writ and complaint seeking a dissolution on the parties' marriage on the ground of irretrievable breakdown. In her complaint returnable June 7, 1994, she also seeks alimony, an assignment of property, and other relief, as on file. The defendant husband, John Laverdure, admitted all of the allegations in the complaint. In his cross complaint, he seeks a dissolution on the ground of irretrievable breakdown, alimony, an equitable division of the marital assets, and other relief as on file.
Each spouse was represented by counsel throughout these proceedings. At the hearing, both parties testified and submitted financial affidavits and written proposed orders. Numerous documentary materials were introduced in evidence, and the wife's daughter testified as a rebuttal witness.
At the close of the taking of the evidence, the parties waived oral argument and were granted time to file briefs, and the case was continued. The briefs were filed and the trial was deemed to be completed on March 1, 1995.
From the evidence, I find as follows:
The plaintiff wife, whose birth name was Lorraine CT Page 1857 Ellis, married the defendant husband at Preston, Connecticut, on August 24, 1979. The plaintiff has resided continuously in this state for at least one year before the date of the complaint. There are no minor children issue of the marriage, and no minor children were born to the wife since the date of the marriage. Neither party was a recipient of public assistance, all statutory stays have expired, and this court has jurisdiction.
The wife is 55 years of age, a high school graduate, and appears in good physical health. She experiences sadness and depression and is in counseling, largely due to the marriage breakdown. She has been continuously employed during 14 years of the marriage at Electric Boat as an analyst, where she now earns $444 per week gross, $345 per week net. She also has a part-time waitress job where she earns $60 per week gross, $10 per week net. Shortly after the parties married, she did waitress work for slightly more than one year while the husband went to college.
The husband is 40 years old and a high school graduate with three years of college. After leaving college, he was a self-employed builder and contractor until sometime in 1991. He worked on home improvement jobs and sold and erected modular homes. He became involved in a 25-lot subdivision, in which he lost most of his investment. In early 1992, he began employment in Foxwoods Casino, and in the summer of 1993, he moved to Illinois. Since then, he has been employed as a floor supervisor in a casino and earns $830 per week gross, $639 per week net, for a regular week. He has opportunities for overtime.
This is the wife's second marriage. Her first, which produced two children, now adults, ended in divorce. This is the husband's first marriage.
This marriage of over 15 years in duration ended for all practical purposes when the defendant took his clothes and moved to the Chicago area for a better paying job and to be closer to his family. The defendant did not wish the plaintiff to accompany him on this, and prior trips to the Illinois area. The parties did not communicate well, and there is an age difference of fifteen years between the parties which certainly contributed to the disintegration of the marriage. The wife terminated a pregnancy at age 44, because the pregnancy was very difficult. The wife claimed the husband was in agreement with CT Page 1858 this decision. He testified that he always wanted children and that this was a problem in the marriage. I find the wife's testimony credible on this point.
The husband was greatly distressed about the failure of his subdivision investment and remained home without working for about seven months. The parties separated finally when the husband went to Chicago in July, 1993. The husband did nothing to try to heal the break, while the wife attempted to keep the parties together. On this evidence, it is clear that the marriage has broken down irretrievably, and that the husband must shoulder a larger portion of the responsibility for its destruction.
He now resides with his girlfriend, whom he met in Chicago, with whom he has very recently fathered a child.
The parties have modest assets. These include the marital dwelling, 80 Gallup Lane, Waterford, Connecticut; the title is solely in the wife's name. The court finds it has a value of $162,000 less a first mortgage of $74,000 and an equity loan of $54,000, leaving an equity of $34,000. The husband provided a substantial part of the down payment for this modular house and performed much of the labor in its construction, which was financed by a mortgage for $79,000. It was completed in 1987 for a total cost of about $107,000. The wife participated in its design, and throughout the marriage, she was responsible for the homemaking chores, cooking, cleaning, shopping, etc.
The wife reports a 1986 Lincoln motor vehicle worth $1,500; home furnishings of $1,000; bank accounts of $350; savings bonds of $150; and her pension, which would provide her with $275 per month at the age of 65.
The husband's financial affidavit reports the same Lincoln at $3,500, and the household furnishings in the marital home as `unknown'. He pays a car loan on a 1989 Chrysler motor vehicle, which is in his mother's name, and no value for the vehicle is reported on his financial affidavit, although it is clear that he has equitable title to it. The affidavit also understated his income.
Against these assets, the parties report liabilities as follows: CT Page 1859
The wife: loans from family and friends totalling $6,000 and attorney's fees of $3,972.
The husband: $8,850, which includes loans from his mother totalling $8,500.
The defendant husband basically proposes that the house be sold, and that the wife retain the household furnishings and her pension. In his written proposed orders, he provides no suggestions as to the disposition of the net proceeds, if any.
The plaintiff, on the other hand, seeks to retain the house, and urges that the husband be ordered to repay the equity loan of $54,000.
I do not credit the wife's testimony that she was totally unaware of the use to which the major portion of the equity loan proceeds was put by true husband, and that she disapproved of it after she became aware of it. He used the funds in a failed and risky attempt to rescue the failing subdivision venture, which greatly jeopardized the equity in the home. I believe that the husband's proposal does not give sufficient weight to his loss of this money from the only substantial family asset, and the fact that he used the $15,000 received from the sale of his interest in the failed subdivision for family expenses during a period in which he did not work. Nor, was this $15,000 repaid by him on the equity loan.
On the other hand, the wife's proposal does not give sufficient credit to the husband's contributions to the marital dwelling, including the down payment and his labor in its construction. I also note that she repaid the loan from her mother, while the $7,200 portion of $8,500 due his mother remains unpaid. Both her mother's loan and the $7,200 were used by the couple for family purposes.
It is significant to note that there is no evidence that the parties, or either of them, made any effort to refinance the first mortgage and equity loan on the house which are variable interest rate loans at high rates of interest. As a result, the plaintiff's total mortgage payment, including real estate taxes, is $266 per week. It is evident that even with her second job income, she has a shortfall compared to her basic weekly expenses[1] and is in need of some support. CT Page 1860
I also find an arrearage as of February 24, 1995, on account of a pendente lite order, to be in the amount of $1,050 due the wife from the defendant. Said arrearage is specifically subject to credit for payments received by the wife on or after February 9, 1995.
Each of the parties have made substantial monetary and nonmonetary contributions to the marriage. The husband has superior earnings and earning capacity than the wife; he also has greater employability and vocational skills than she does. He is also 15 years younger. These factors lead me to conclude that he has a better opportunity than she has to acquire capital assets and income in the future.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and findings. I have also considered the taxable consequences of the financial awards set forth and the issues raised in the defendant's motion in limine.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown.
Orders shall also enter as follows:
(1) The wife shall take, have and hold all right, title and interest in, free of the husband's claims, the following real and personal property, all of which is assigned to her: the marital dwelling at 80 Gallup Lane, Waterford, Connecticut, and all furniture and furnishings therein, subject to the first mortgage and equity loan which she is to pay and hold him harmless; the 1986 Lincoln motor vehicle; her bank accounts; savings bonds; and her pension.
(2) The husband shall take and have the motor vehicle he is operating and all personal property now in his possession, which is assigned to him, free of wife's claims.
(3) The husband shall pay to the wife, as periodic alimony, the sum of $75 per week for a period of eight years from the date hereof, which shall terminate upon the death of either party, the wife's remarriage, or pursuant to the provisions of General Statutes § 46b-86(b). The husband shall execute an authorization to permit immediate garnishment of his CT Page 1861 wages to secure said payments. Said alimony shall not be otherwise modifiable as to term; shall not be affected by any discharge in bankruptcy, is actually in the nature of alimony, and is intended for the support of the wife, as she is in need of such support.
(4) The arrearage of $1,050, subject to credits, shall be paid at the rate of $20 per week until paid, and shall also be secured by said wage garnishment.
(5) So long as the defendant is obligated to pay alimony hereunder, he shall maintain the wife as irrevocable beneficiary of the life insurance policy of $40,000 face amount proceeds shown on his financial affidavit. He shall execute and deliver an authorization to wife so that she may from time to time determine the status of said policy.
(6) Each party shall pay the liabilities shown on their respective financial affidavits.
(7) All documents necessary or instrumental to effectuate the orders entered herein shall be completed and exchanged within thirty (30) days hereof.
(8) Each party shall pay his or her own attorney's fees.
(9) The defendant shall inform the plaintiff of his home address and of any changes in the name and address of his employer, so long as he is obligated to pay alimony hereunder.
Teller, J.